UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JASON SHAVER,

   Petitioner,

v.             Case No. 2:15-cv-1
              HON. ROBERT HOLMES BELL
JEFFREY WOODS,

   Respondent.
_____/

## REPORT AND RECOMMENDATION

   Petitioner Jason Shaver filed this petition for writ of habeas corpus challenging the validity of his state court convictions.  On September 10, 2010, a jury convicted the Petitioner of two counts of first degree criminal sexual conduct in violation of Mich. Comp. Laws § 750.520b(2)(b)(victim under 13, defendant 17 years or older).  After his conviction, the trial court sentenced the Petitioner as a third habitual offender to concurrent sentences of 28 to 56 years for each count.

   Petitioner maintains that his conviction was obtained in violation of his federal rights.  Specifically, Petitioner asserts three claims:

   I.  Petitioner's rights of confrontation, compulsory process and to present a defense were violated by the trial court's ruling that the Rape Shield Act prevented evidence of the children's prior abuse by their father.

   II.  Petitioner received ineffective assistance of trial counsel, contrary to the Sixth Amendment, when counsel failed to investigate or present exculpatory evidence.

   III.  The verdict was against the great weight of the evidence.

The Respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.  This matter is now ready for decision.  In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I recommend that this petition for writ of habeas corpus be denied.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective.  Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute.  Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  The Supreme Court

held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28

U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

The Michigan Court of Appeals adequately summarized the facts of this case:

Defendant's convictions arise from alleged sexual contact between defendant and two minors: J.R. and B.R. At the time of trial, J.R. was ten years old, and B.R. was nine years old. Defendant is a cousin of J.R.'s and B.R.'s father. Defendant lived with the family "off and on" over the 11 years the children's parents were married. When defendant stayed with the family, he slept either on the couch or in the extra bunk bed in J.R.'s bedroom. In 2005, when J.R. was four years old and B.R. was three years old, the family moved to Florida with defendant. According to the children's mother, she, the children's father, and defendant engaged in a "sexual act together" when they were living in Florida. After staying in Florida for one year, the family moved to Cedar Springs.

J.R. testified at trial that the sexual conduct with defendant started when he was four years old and living with defendant in Florida and that the conduct continued when they lived together in Cedar Springs. According to J.R., there were 17 instances of sexual conduct involving defendant, although he could not remember all of the specific details of each occurrence. J.R. stated that defendant put his penis in J.R.'s mouth and "butt" and that defendant once put his finger in J.R.'s "butt." Furthermore, defendant made J.R. put his penis in defendant's mouth and "butt." J.R. specifically testified that "white stuff came out" and went on his chin, which defendant told J.R. to wipe off. J.R. described defendant's penis as "medium sized with yellow and whitish hair." According to J.R., defendant told him not to tell anyone about the sexual conduct or he would kill J.R.'s mother. J.R. testified that he initially did not tell anyone because he knew that defendant had a knife, which he kept in the bathroom cabinet above the toilet. J.R. ultimately disclosed defendant's conduct to his mother and to his aunt after defendant moved out of the home.

B.R. testified that when defendant lived with them "[h]e put his thing in [her] butt." According to B.R., it felt "[b]ad," and defendant did it to her 20 times on different dates, which she could not specifically remember. B.R. explained that defendant told her that he would "call the cops on [her] mom" if B.R. told anyone what happened. B.R. ultimately told her mother about the sexual conduct one night after defendant "left."

 The children's mother testified that she found "a sharp-edged knife" in her bathroom in "a middle drawer." She did not tell J.R. about the knife, but he knew about it nonetheless. She also testified that her husband's hair was "light brown."

 Royce Brooks testified that he and defendant shared a cell in the county jail in September and October 2009. According to Brooks, he returned to his cell from the nurse's station on about October 22, 2009, and saw defendant in the cell crying "like he did many, many times." Brooks could not go to sleep, so he asked defendant "what the problem was." Defendant "just blurted out, I did it." Brooks replied, "Did what?" Defendant then said "that he had been involved in a sexual relationship with a man and a woman and they had two children, and that at some point in time during the ménage a trois . . . the children came into the room and witnessed what went on in there including homosexual acts between the two men." Defendant then told Brooks that, "[a]t some point in time," he "went into the kitchen, and was standing in front of the sink, and the male child, he allowed the male child to perform fellatio on him." Defendant "started to say what happened between him and the girl that was involved in this," but Brooks "shut him up." Brooks got angry because he had grandchildren and "did not really want to know this story." Brooks testified that defendant made another comment to him the next day, which "just set [him] off again."

 Becky Yuncker, an interview specialist and clinical supervisor at the Children's Assessment Center, testified that she interviewed B.R. before the children disclosed defendant's sexual conduct. Yuncker did not interview J.R. at that time and did not know whether anyone else had done so. B.R. did not disclose any sexual contact between her and defendant. Yuncker's notes indicated that defendant was still living in the home as of that date. However, B.R. was interviewed again after the disclosures to her mother and, at that time, described sexual contact involving penetration with defendant.

ECF No. 7-12, PageID.469-470.

 During the trial, the defense sought to introduce evidence that the children's father had also abused them.  The defense argued that this evidence would help demonstrate that the victims' age-inappropriate knowledge of sexual conduct came from a source other than the defendant.  However, the trial court excluded this evidence based on the Michigan Rape Shield

- 5 -

Act, Mich. Comp. Laws § 750.520j.  The court reasoned, in part, that there was no actual evidence offered establishing that the facts in the father's case were similar to the facts in the present case.

After his conviction, the Petitioner appealed, asserting the same three claims as this petition, as well as an additional request for an evidentiary hearing.  The appellate court remanded the case back to the trial court to hold two evidentiary hearings.  First, the trial court was instructed to conduct an in-camera review of the evidence in a sexual assault case involving the victims' father.  Pursuant to the Michigan rape-shield statute, evidence of specific instances of a victim's sexual conduct shall not be admitted "unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value." Mich. Comp. Laws § 750.520j. In *People v. Morse*, 586 N.W.2d 555, 560 (Mich. Ct. App. 1998), the court stated that "Michigan law dictates that an in-camera hearing is appropriate to determine whether: (1) defendant's proffered evidence is relevant, (2) defendant can show that another person was convicted of criminal sexual conduct involving the complainants, and (3) the facts underlying the previous conviction are significantly similar to be relevant to the instant proceeding."  Therefore, the trial court was to determine if the facts underlying the father's conviction were significantly similar to the Petitioner's case as to be relevant to explain the victims' age-inappropriate knowledge.  Second, the trial court was instructed to conduct an evidentiary hearing regarding the ineffective assistance of counsel claim.  After the hearings, the trial court found that the underlying evidence was not relevant because it was not similar and that the Petitioner's trial counsel was not ineffective.

On appeal, the Michigan Court of Appeals then affirmed the Petitioner's conviction. Although the Michigan Supreme Court initially granted leave to appeal, the court later vacated its order after oral argument. Petitioner has now filed this petition for a writ of habeas corpus.

In his first claim, Petitioner argues that the trial court denied Petitioner the right to confront witnesses, to compulsory process, and to present a defense when it excluded evidence that J.R. and B.R. were molested by their father. As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry into whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.), *cert. denied*, 124 S. Ct. 345 (2003). "[C]ourts have defined the category of infractions that violate fundamental fairness very narrowly." *Bugh*, 329 F.3d at 512 (internal quotations and citations omitted).

Moreover, the Supreme Court has stated that the right to confrontation "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Michigan v. Lucas,* 500 U.S. 145, 149 (1991) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)). The Supreme Court has held that the rights of rape victims are important enough to

justify some limitations on a defendant's right to confront.  *See id.* at 149-50. ("The Michigan [rape-shield] statute represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy.").

The Michigan Court of Appeals' judgement that the trial court properly applied the Michigan rape-shield statute was not contrary to, or an unreasonably application, of clearly established federal law.  The court determined that the victims' father's sexual assault case was not highly similar to the Petitioner's case, therefore, the evidence was irrelevant.  During the evidentiary hearing, the court found that the father pleaded no contest to one count of sexual assault for inserting his penis into B.R.'s mouth.  There was no evidence that the father ever assaulted J.R. In this case, the Petitioner was charged with both genital and anal penetration of B.R. and anal and oral penetration of J.R.  The Michigan Court of Appeals' decision that this conduct was not highly similar, therefore irrelevant, was a reasonable conclusion. As discussed above, the Supreme Court has held that excluding marginally relevant evidence of prior sexual experience or activity is a permissible limitation on the right to confront. *See id.* at 149.

In his second claim, Petitioner maintains that he received ineffective assistance of counsel when his trial attorney failed to investigate and present exculpatory evidence regarding his alleged impotency and the color of his pubic hair.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the

presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "'to make the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland,* 466 U.S. at 690). This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); accord *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004). A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir.1991) (cited in *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000)).

In rejecting the Petitioner's ineffective assistance of counsel claim, the Michigan Court of Appeals found that the trial counsel was not deficient when she did not present evidence of the Petitioner's alleged impotency.   The court stated:

> With respect to counsel's alleged deficiency for not presenting evidence of defendant's impotence, we conclude that defendant has failed to overcome the strong presumption that counsel rendered adequate assistance. *See Strickland*, 466 U.S. at 690. Decisions regarding what evidence to present and what witnesses to call are presumed to be matters of trial strategy. *People v. Rockey*, 237 Mich. App 74, 76; 601 NW2d 887 (1999); *People v. Dixon*, 263 Mich. App 393, 398; 688 NW2d 308 (2004). Defendant's trial counsel testified at the *Ginther* hearing that she was aware before trial that defendant claimed to have impotence issues but that there was not conclusive evidence that defendant was impotent. According to counsel, she was aware that defendant was involved in a sexual relationship with Robert Farrington, and defendant admitted that he was "involved" with the victims' father. Counsel testified that "[defendant's] statements regarding the children's father and his relationship with the children's father contradicted his inability to maintain an erection." Furthermore, counsel testified that her research regarding defendant's alleged causes for his impotency did not guarantee impotence. Counsel did not want to present the impotence issue at trial and open a "can of worms" by having the prosecution introduce evidence of defendant's homosexual relationships and argue that defendant could perform sexually with some people but not others. In light of this evidence, counsel's strategic decision not to present evidence of impotence was not professionally unreasonable. *See Strickland*, 466 U.S. at 687–688.

> In addition to the testimony above regarding defendant's sexual performance, Amy Vanover testified that defendant could maintain a partial erection and ejaculate. Not only has defendant failed to establish that his counsel was deficient, but defendant has not established the factual predicate of his claim on the basis of impotence to an extent that "excludes hypotheses consistent with the view that his trial lawyer represented him adequately." *People v. Hoag*, 460 Mich. 1, 6; 594 NW2d 57 (1999), quoting *Ginther*, 390 Mich. at 442–443.

ECF No. 7-12, PageID.473-474.

Similarly, the Michigan Court of Appeals determined that the trial counsel was not deficient when she did not to present evidence of the Petitioner's pubic hair color.  The court stated:

> With respect to counsel's alleged deficiency for not presenting evidence of defendant's pubic-hair color, we likewise conclude that counsel's decision not to present such evidence was a matter of trial strategy for which counsel was not professionally unreasonable. See *Strickland*, 466 U.S. at 687–688, 690. Moreover, defendant has not established the factual predicate of this claim. See *Hoag*, 460 Mich. at 6. At trial, J.R. testified that defendant's pubic hair was "yellow and whitish." However, defendant insists that it is brown or black and that counsel, therefore, should have presented evidence of his hair color. On remand, the trial court determined that there was only a slight discrepancy between defendant's actual pubic-hair color and the color described by J.R. This finding was not clearly erroneous. See *LeBlanc*, 465 Mich. at 579. During the *Ginther* hearing, counsel testified that defendant "yanked out some of his pubic hair" in her presence and showed it to her. According to counsel, defendant's pubic hair did not look black or dark as defendant insisted; it would have passed for "reddish blond" or light brown. Counsel testified that the color was "close" to what J.R. described and could have passed for "a little boy's description." On the basis of counsel's testimony regarding the color of defendant's pubic hair, we will not second guess her decision not to present evidence regarding the color of defendant's pubic hair where it was "close" to the description that J.R. offered. See *Rockey*, 237 Mich. App at 76; see also generally *United States v. Mandycz*, 447 F3d 951, 960–961 (CA 6, 2006) (explaining that modest discrepancies do not undermine an identification finding); *United States v. Hajda*, 135 F3d 439, 444 (CA 7, 1998) (stating that a minor variance in hair color does not invalidate an identification of a defendant). Counsel has wide discretion regarding matters of trial strategy. *People v. Odom*, 276 Mich. App 407, 415; 740 NW2d 557 (2007).

ECF No. 7-12, PageID.474.

The Michigan Court of Appeals correctly set forth the two-part ineffective assistance of counsel test established by the Supreme Court in *Strickland*.  Moreover, the court's

application of the facts to the *Strickland* test was not unreasonable.  The trial attorney was not

deficient when she reasonably chose not to present evidence based on her investigation.

Petitioner fails to show how the state court's decision was contrary to or an unreasonable

application of clearly established federal law.

       Petitioner's third claim is that his conviction is against the great weight of the

evidence.  In rejecting this claim, the Michigan Court of Appeals stated:

>        Defendant's final argument is that the verdict was against
> the great weight of the evidence. We disagree. We review for an
> abuse of discretion the trial court's denial of a motion for a new
> trial on the ground that the verdict was against the great weight of
> the evidence.  *People v Stiller*, 242 Mich App 38, 49; 617 NW2d
> 697 (2000). A court should grant a new trial on the basis of the
> weight of the evidence only where the evidence preponderates so
> heavily against the verdict that it would be a miscarriage of justice
> to allow the verdict to stand. *People v Lemmon*, 456 Mich 625,
> 642; 576 NW2d 129 (1998); see also *People v Gadomski*, 232
> Mich App 24, 28; 592 NW2d 75 (1998). Conflicting testimony and
> questions of witness credibility are insufficient grounds for
> granting a new trial. *Lemmon*, 456 Mich at 647. Exceptions include
> instances where "testimony contradicts indisputable physical facts
> or laws," where the testimony "is patently incredible or defies
> physical realities," "where a witness's testimony is material and is
> so inherently implausible that it could not be believed by a
> reasonable juror," and where a witness's testimony has been
> seriously impeached and the case is marked by "uncertainties and
> discrepancies." Id. at 643-644 (citations omitted).
>
>        In this case, there was no evidence at trial to suggest that
> the testimony of the prosecution's witnesses contradicted
> indisputable physical facts, was patently incredible, or defied
> physical realities. The evidence does not so heavily preponderate
> against the verdict that it would be a miscarriage of justice to allow
> defendant's convictions to stand.  See id. at 642.  We note that
> defendant insists that the verdict was contrary to physical realities
> because he is impotent.  Notwithstanding the evidence received by
> the trial court at the Ginther hearing contradicting defendant's
> assertion of impotence, no evidence of impotence was presented at
> trial; we only consider the evidence presented at trial when
> reviewing defendant's great-weight-of-the-evidence claim. See
> *People v Roper*, 286 Mich App 77, 89; 777 NW2d 483 (2009)

(stating that a claim that a verdict is against the great weight of the evidence is considered by evaluating the evidence presented at trial).

ECF No. 7-12, PageID.474-475.

This claim is a state-law claim that is not cognizable on habeas review. *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002). Instead, a habeas court can review claims that the evidence at trial was insufficient. *Id.* The test is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Petitioner has failed to show how the evidence is insufficient to support any of the elements of the crime.

In summary, the undersigned concludes that Petitioner's claims are without merit and, therefore, recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme

Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong.  First, Petitioner has failed to show that his rights to confrontation, compulsory process, or a fair trial were violated when the trial court excluded evidence based on the rape-shield statute.  Second, Petitioner failed to show that his trial counsel was ineffective.  Third, the Petitioner failed to show that there was insufficient evidence to support his conviction.  Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCiv R 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

   */s/ Timothy P. Greeley*
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: August 8, 2016

- 14 -